## FARLEY *v.* STATE OF INDIANA.

[No. 30,154. Filed October 16, 1962. Rehearing denied December 18, 1962.]

*Richard M. Orr,* and *Money, Orr & Bridwell,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *William D. Ruckelshaus,* Assistant Attorney General, for appellee.

ACHOR, J.—Appellant was tried and convicted of murder in the first degree in the Marion Criminal Court, Division One. The basic facts in the case are as follows:

On the evening of December 24, 1959, appellant came to the home of the decedent and asked decedent's wife to go with him to the home of the latter to get some Christmas presents for the children of decedent and his wife. The decedent refused to allow his wife to go with appellant. An argument ensued, whereupon appellant and decedent walked into the back yard followed by decedent's son, Charles Davis. Appellant got in his car which was parked at the rear of the house, told decedent to wait until he came back, and drove away. He drove down the alley, stopped, took a 22 caliber pistol from the trunk of the car and laid it beside him on the front seat. He then drove back to the rear of decedent's house.

Decedent in the meantime had gone into the house and was leaving by the back door to go after some coal. Appellant and decedent met and renewed their altercation. Appellant pulled the gun from his pocket whereupon decedent grabbed his hand. A tussle followed during which three shots were fired. Charles Davis [decedent's son], who had witnessed the inci-

dent from the back door, ran into the house to get his mother. When they returned, decedent was lying at the back steps. Appellant then came up to him, kicked him and said, "die like a dog."

Following the shooting, appellant threw his gun into Fall Creek, from which it was not recovered. Another gun was found near the body of decedent from which two shots had been fired.

As grounds for appeal, appellant asserts first, that the verdict was not sustained by sufficient evidence. Specifically, he asserts (a) that the shooting was not with premeditation or with malice, which elements are essential to a conviction for first degree murder; and (b) that the shot which he fired and presumably caused the death of the decedent was fired in self defense.

Appellant's conduct in leaving decedent's home, getting a gun and returning to decedent's home, for no explainable reason other than to continue their controversy, fortified by a gun, with which he in fact killed the decedent, is conduct sufficient in itself from which reasonable men might infer premeditation and malice aforethought.

Appellant contends that decedent fired the first shot and that, under the circumstances, he shot the deceased in self defense. The jury was not necessarily bound by this testimony but, if believed, it did not transform appellant's assault upon the decedent into an act of self defense. Decedent had a right to resist appellant's invasion of his person and property with such force as was necessary. *Flick* v. *State* (1935), 207 Ind. 473, 193 N. E. 603; *Page* v. *The State* (1895), 141 Ind. 236, 40 N. E. 745; *Plummer* v. *The State* (1893), 135 Ind. 308, 34 N. E. 968; *Miller* v. *The State* (1881), 74 Ind. 1. It is

ludicrous to contend that, as a matter of law, a trespasser who draws a gun upon a person, on the latter's own premises, is acting in self defense, merely because the latter resists his invasion in like manner.

Next, appellant asserts as error the fact that the trial court did not require a police officer to submit into evidence a written statement of events obtained by the officer from Charles Davis, son of the decedent, he being the only witness to the shooting other than the appellant. It is not clear from the record that the statement was either written by the witness or signed by him.

This court had a comparable question before it in the case of *Anderson* v. *State* (1959), 239 Ind. 372, 376, 156 N. E. 2d 384. In that case this court held that police reports in the files of the prosecuting attorney could not be ordered produced for examination by the defendant unless "it is first shown that such statements are in direct conflict with the testimony of the witness in open court and that such prior statements would prove the innocence of the accused. . . ." If police officers cannot be required to produce statements procured by them in the course of their investigation, except under the circumstances above recited, there is less reason why such statements should be produced in evidence during the trial.

In the case at bar the court permitted the appellant to interrogate the officer at length regarding the contents of the written statement sought to be introduced. There was no evidence from any witness that the prior statement made by the witness differed from his testimony given in open court or that such prior statement would prove (or tend to prove) the innocence of the accused. There

was, therefore, no foundation laid for the introduction of the statement of the witness, and refusal of the court to require the admission of this statement into evidence did not constitute an abuse of discretion.

Next, appellant asserts that error was committed in the curtailment of cross-examination. During direct examination, police officer William Kaiser was interrogated regarding conversations had on the 25th day of December, 1959 and the 3rd day of January, 1960 with various persons regarding the offense. During cross-examination the appellant sought to interrogate the officer regarding a conversation had with the witness Charles Davis on December 24, 1959. The court sustained the objection to the question asked.

■ Without deciding whether such limitation of cross-examination constituted error, we do conclude that the error, if any, was not reversible, under the circumstances of the case. The scope of cross-examination is largely within the discretion of the trial court, and reversible error will not be assigned to the exercise of that discretion unless it appears that the accused may have been prejudiced thereby. *Barker* v. *State* (1958), 238 Ind. 271, 150 N. E. 2d 680; *Stice* v. *State* (1950), 228 Ind. 144, 89 N. E. 2d 915; *Kelley* v. *State* (1948), 226 Ind. 148, 78 N. E. 2d 547.

In the present case, after the appellant was denied an opportunity to cross-examine the officer regarding a particular conversation with the witness Charles Davis, appellant did immediately thereafter interrogate the witness as his own witness, upon the identical subject matter. Under these circumstances it does not appear that reversible error

was committed by this limitation of cross-examination.

Finally, appellant asserts that the court committed reversible error in refusing to grant the motion for new trial on the ground of newly discovered evidence. During the trial the witness Charles Davis testified that he witnessed the shooting from the back door of his house. In support of the fact of newly discovered evidence appellant filed an affidavit of one John O. Lewis, who was attorney during the preliminary hearing of the case. This attorney stated in his affidavit that to the best of his recollection Charles Davis testified during the preliminary hearing that he was inside the house when the shots were fired. Counter-affidavits were filed by the state and signed by persons at the hearing to the effect that the witness' testimony at the preliminary hearing was the same as that given at the trial, namely, that he was in the back doorway of his home at the time of the fatal shooting. The statements are not necessarily in conflict, but if conflicting, we cannot say that the trial court abused its discretion in denying the motion for new trial because of the alleged newly discovered evidence.

Furthermore, under the record before us, it may well be that the trial court considered that the affidavit regarding the newly discovered evidence was defective in that it did not show diligence would have required that counsel immediately inquire from the attorney who had preceded him in the case regarding the information which he might have had to the contrary. He could not with propriety wait until after a judgment in the case had been rendered and then ask for a new trial on the ground that he did not have information

which he might have obtained at the time of the trial by the exercise of due diligence.

Finding no reversible error, judgment is affirmed.

Arterburn, C. J., Bobbitt and Landis, JJ., concur.

Jackson, J., concurs in the result.

NOTE.—Reported in 185 N. E. 2d 414.